**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-0450-17T2

JENNY STANKOWSKI,

     Petitioner-Appellant,

v.

BOARD OF TRUSTEES,
PUBLIC EMPLOYEES'
RETIREMENT SYSTEM,

     Respondent-Respondent.

_____

         Argued January 30, 2019 – Decided May 28, 2019

         Before Judges Koblitz and Ostrer.

         On appeal from the Board of Trustees of the Public Employees' Retirement System, Department of the Treasury, Docket No. 2-10-268003.

         Jason E. Sokolowski argued the cause for appellant (Zazzali, Fagella, Nowak, Kleinbaum & Friedman, attorneys; Jason E. Sokolowski, of counsel and on the briefs).

         Robert S. Garrison, Jr., Deputy Attorney General, argued the cause for respondent (Gurbir S. Grewal, Attorney General, attorney; Melissa H. Raksa,

Assistant Attorney General, of counsel; Robert S. Garrison, Jr., on the brief).

PER CURIAM

Petitioner Jenny Stankowski appeals from the final decision of the Public Employees' Retirement System (PERS) Board of the Trustees, denying her application for accidental disability retirement benefits. The Board found that Stankowski did not suffer a disabling injury. We reverse and remand for further proceedings.

I.

Stankowski worked as a public school custodian in Winslow Township for about twenty-five years before she injured her back in March 2008. As she attempted to fold two large tables in a media center, the tables suddenly collapsed. Stankowski jerked away to avoid getting hit. She immediately felt back pain. She reported the injury the next day, and filed for workers' compensation benefits. She was out of work until September 2008.

Before the accident, as set forth in her job description, Stankowski moved furniture, operated heavy equipment like floor buffers, and lifted objects up to fifty pounds daily. When she returned to work after the accident, she did none of those things. She worked light duty, cleaning tables and chairs, and performing other tasks less physically demanding than before the accident. She

A-0450-17T2

also depended on help from other custodians. After the end of the school year in 2010, she was laid off because the school district privatized custodial services. She stopped actual work in May of that year, and used vacation time until the layoff date the following month. Stankowski has not worked since.

In October 2011, roughly a year and a half after she was let go, Stankowski applied for accidental disability benefits. The Board denied her application and Stankowski appealed. After a contested hearing at which she and two experts testified, an Administrative Law Judge issued an initial decision granting her application. But, upon further review, the Board rejected the ALJ's decision and denied the application.[1]

The case presented a battle of the experts. The Board's expert, Arnold Berman, M.D., opined that Stankowski did not suffer a disability. Stankowski's expert, David Weiss, D.O., asserted she did, and the 2008 accident caused it.

---

[1] Four years elapsed between the Board's referral of the case to the Office of Administrative Law in April 2012, and the contested hearing. Another year passed before the ALJ's initial decision. The Board issued its decision on August 22, 2017.

A-0450-17T2

The experts based their opinions on their review of Stankowski's voluminous treatment record, and their respective examinations of Stankowski.[2]

Dr. Weiss's report detailed Stankowski's complaints. Stankowski told him that she had difficulty performing household chores such as cooking, cleaning, and shopping. She no longer participated in her favorite recreational activities such as fishing and shooting. She could not sit or stand for more than ten minutes without discomfort. She had trouble sleeping; walking could be a challenge; and lifting anything heavier than five pounds was problematic. She experienced chronic pain at level eight, on a scale of zero to ten.

Dr. Weiss testified that during his November 2013 examination, Stankowski manifested observable symptoms. During the sitting root test and leg raises, she experienced pain in her back and legs – symptoms indicative of radiculopathy. She had restricted motion and was tender along the lower back. She was able to walk on her heels but not her toes. Dr. Weiss also noticed that

---

[2] The experts' reports were somewhat dated by the time of the Spring 2016 hearing. Dr. Weiss issued his expert report in November 2013. Dr. Berman prepared his expert report almost two years earlier, in January 2012. Dr. Berman supplemented his report with a two-page letter in October 2014, which he prepared without the benefit of an additional physical examination. Dr. Berman briefly noted that he reviewed additional records, all dated before 2012, plus Dr. Weiss's 2013 evaluation, and they did not change his mind.

4

Stankowski walked with a limp. He did not observe any overt signs of symptom magnification.

Dr. Weiss also relied on diagnostic-imaging tests conducted during the years following the accident. An MRI taken shortly after the accident in 2008 showed herniation of discs in the lower spine. Another MRI in 2011 showed continued degeneration of the lower disc spaces. Electromyographies (EMGs) in 2008 and 2011 also showed evidence of radiculopathy. Discograms in 2011, which involved inserting dye into targeted disc spaces, showed severe degeneration on the L4-5 and L5-S1 discs. It also confirmed that those discs were the source of Stankowski's pain.

Dr. Weiss concluded that Stankowski would be unable to satisfy the "postural or functional" duties of her custodian job. However, he was unaware that Stankowski had returned to work for two years after the accident, albeit on light duty. Asked if she could lift up to twenty pounds "on a daily basis as part of her job," Dr. Weiss testified she could do so "occasionally," based on a functional capacity evaluation (FCE) that was prepared in August 2008.[3] He

---

[3] The FCE consisted of numerous physical tests that analyzed Stankowski's gait, ability to lift, push and pull objects, and to maintain balance. The evaluation also said that Stankowski appeared to exert sub-maximal effort. Neither party questioned the validity of Stankowski's 2008 FCE, although the testifying

A-0450-17T2

concluded that Stankowski was able to perform light duty, but "[t]he problem is, the job is not light duty." Dr. Weiss added that he thought the injury was caused by the 2008 accident because she did not express any symptoms before then.

By contrast, Dr. Berman testified that Stankowski did not present physical symptoms during his hands-on evaluation in January 2012. Although Stankowski complained of lower back pain that travelled down her legs, Dr. Berman testified that she demonstrated good flexibility and did not present much pain during the exam. Dr. Berman did not find any symptoms of radiculopathy during Stankowski's leg raises either. He found that she could walk on her toes and heels without problem, which was also inconsistent with radiculopathy. He

---

physicians expressed doubts. While Dr. Weiss stated that FCEs "are still considered to be the gold standard for testing a patient's capacity," he noted the absence of definitive studies in the medical literature to corroborate the evaluations. Dr. Berman testified that "everyone takes these kind of [studies] tongue-in-cheek." See Cheryl L. Anderson, Comparative Evidence or Common Experience: When Does "Substantial Limitation" Require Substantial Proof Under the Americans with Disabilities Act?, 57 Am. U. L. Rev. 409, 462 (2007) ("Despite the claim that FCEs lead to 'objective information' about an individual's functional abilities, the reliability of the various systems used to measure functional capacity have been the subject of debate in the professional literature. The methodology each FCE system uses to determine impairment has not been adequately studied.").

determined that Stankowski had "subjective complaints of pain without objective findings clinically."

He also reviewed Stankowski's imaging results. Although they showed abnormalities, he said the results needed to be correlated with clinical findings from a hands-on evaluation to have any significance. He explained that not all individuals showing abnormalities in diagnostic tests actually manifest symptoms such as pain. Without clinical correlation, an individual might experience "minor symptoms, [that will] go on forever, but they won't be disabling."

Dr. Berman noted in his report that Stankowski had worked for almost two years after the accident. His report did not expressly state whether Stankowski performed light or regular duty upon her return. He admitted in his testimony that he was unaware she only worked light duty. Although he testified that he did not recall his examination of Stankowski, he insisted in his testimony that Stankowski told him that she worked "at a full-duty level" and did not say she had any assistance.[4]

---

[4] In his report, Dr. Berman wrote, "The member is not totally and permanently disabled for the duties of her occupation of Custodian because she returned to Active Duty for two years following the injury without difficulty and was laid off with the rest of her department and did not stop working because of the injury of 03/03/08."

Dr. Berman concluded that the degenerative changes shown in Stankowski's imaging results were likely from a pre-existing condition, and not a traumatic event. The damage shown in the 2008 and 2011 MRIs would only show after years of degeneration. He dismissed the MRI and EMG results as false positives, and gave little weight to the discogram results as reflective of a disability. He noted that three of Stankowski's treating physicians all believed that she was capable of working after the accident. Dr. Berman concluded that Stankowski did not need further treatment. She could return to work and should be able to participate in all "activities of daily living."

Stankowski testified about the kinds of duties she performed before and after the accident. She testified that she worked through pain upon her return to her job after the accident. She experienced a burning sensation down her right leg, partly on her left leg, and pain in her back. She said she filed for disability in October 2011 because she "realized that [she] really couldn't work any more . . . because [she] was in too much pain." She asserted that as a result of the pain, she ceased participating in activities she enjoyed before the accident, such as baking, cooking, hunting, and canoeing.

The ALJ found that Stankowski suffered a permanent, disabling injury, which was caused by the 2008 accident, and she had been experiencing pain

ever since. The ALJ found Stankowski's testimony credible. The ALJ also found Dr. Weiss's testimony more persuasive than Dr. Berman's. Dr. Weiss incorporated Stankowski's medical history into his conclusions while Dr. Berman discounted it. The diagnostic imaging showed abnormalities, which were correlated with Stankowski's repeated, but failed attempts at medical intervention to lessen her pain. The ALJ noted that Dr. Berman was under the mistaken impression that Stankowski had returned to work at regular duty. The ALJ concluded, "There are no accommodations that could be made to permit the petitioner to continue working [as a custodian]."

The PERS Board rejected the ALJ's initial decision, "based on expert testimony to conclude that Ms. Stankowski is not disabled as a direct result of a traumatic event . . . ." The Board found Dr. Berman more persuasive because he "relied upon objective medical records and testing," particularly his clinical examination, which found no correlation between the imaging results and a disability. The Board concluded that Dr. Weiss placed undue weight on Stankowski's "subjective complaints." The Board was persuaded by Dr. Berman's opinion that the EMG tests are often inaccurate, and the MRI results reflected long-term degeneration, not a traumatic cause. The Board noted that Stankowski's history of working light duty showed that accommodations could

9

be made for her. The Board noted that two of her treating physicians concluded that she was capable of working.

Notwithstanding its findings regarding the experts' opinion, the Board did not disturb the ALJ's finding that Stankowski testified credibly. The Board stated, "The Board modifies the ALJ's factual findings that are not pertinent to lay-witness credibility . . . ." Nonetheless, after noting that Stankowski returned to work in 2008 after a six-month absence, the Board asserted, "Ms. Stankowski denied being unable to perform her job duties."[5]

## II.

On appeal, Stankowski contends that she is entitled to accidental disability retirement benefits. To be eligible, a petitioner must show five elements.

> 1. That he [or she] is permanently and totally disabled;
> 2. as a direct result of a traumatic event that is
>    a. identifiable as to time and place,
>    b. undesigned and unexpected, and
>    c. caused by a circumstance external to the member (not the result of pre-existing disease that is aggravated or accelerated by the work);
> 3. that the traumatic event occurred during and as a result of the member's regular and assigned duties;
> 4. that the disability was not the result of the member's willful negligence;

---

[5] In support of this assertion, the Board cited not Stankowski's testimony, but a portion of Dr. Weiss's testimony in which he stated that Stankowski could not perform the job requirements of a custodian. The Board also referred to exhibit "P-19," although the record included only thirteen plaintiff's exhibits.

5. that the member is mentally or physically incapacitated from performing his usual or any other duty.

[Richardson v. Bd. of Trs., Police & Firemen's Ret. Sys., 192 N.J. 189, 212-13 (2007); N.J.S.A. 43:15A-43.]

Only the first two elements are at issue in this case: whether Stankowski has a permanent disability caused by a workplace accident. A petitioner has the burden to prove that he or she is entitled to disability retirement benefits and "must produce such expert evidence as is required to sustain that burden." See Patterson v. Bd. of Trs., State Police Ret. Sys., 194 N.J. 29, 51 (2008) (addressing alleged mental disability).

Stankowski contends that she is permanently and totally disabled as a result of the 2008 accident. She argues that the Board's decision was contrary to the evidence in the record. In short, she contends the ALJ got the case right and the Board got it wrong. Alternatively, Stankowski asserts that she should be eligible for ordinary disability retirement benefits, which are less generous than accidental disability benefits. See Patterson, 194 N.J. at 43; compare N.J.S.A. 43:15A-45 (allowance for ordinary disability retirement under PERS) with N.J.S.A. 43:15A-46 (allowance for accidental disability retirement under PERS). The legal test for ordinary disability benefits still requires a petitioner

11

to prove a disability. Kasper v. Bd. of Trs. of the Teachers' Pension & Annuity Fund, 164 N.J. 564, 573-74 (2000); N.J.S.A. 43:15A-42 (ordinary disability retirement under PERS). However, a petitioner does not need to prove that the disability was caused by a workplace accident. Kasper, 164 N.J. at 573-74.

Our scope of review is limited. We will not disturb the Board's decision "unless there is a clear showing that it is arbitrary, capricious, or unreasonable, or that it lacks fair support in the record." Russo v. Bd. of Trs., Police & Firemen's Ret. Sys., 206 N.J. 14, 27 (2011). Although we may have reached a different decision, we cannot simply substitute our judgment for the Board's. In re Stallworth, 208 N.J. 182, 194 (2011); Clowes v. Terminix Int'l, Inc., 109 N.J. 575, 587-88 (1988).

However, we will not "rubber stamp" an agency decision that is "clearly erroneous." In re Adoption of Amendments to Ne., Upper Raritan, Sussex and Upper Delaware Water Quality Mgt. Plans, 435 N.J. Super. 571, 584 (App. Div. 2014). We need not affirm an agency's decision if we have "a definite conviction . . . that a mistake must have been made" for example, by "the obvious overlooking or underevaluation of crucial evidence . . . ." 613 Corp. v. State, Div. of State of Lottery, 210 N.J. Super. 485, 495 (App. Div. 1986).

12

We are also mindful that the Board itself was reviewing the ALJ's initial decision. The ALJ had the opportunity to consider live witness testimony. The Board may not reject the ALJ's findings as to a lay witness's credibility unless it determines, based on its review of the record, that the findings are arbitrary, capricious or unreasonable or not supported by sufficient competent and credible evidence. N.J.S.A. 52:14B-10(c). The Board is less constrained in reviewing findings based upon expert witness testimony, although it must still "state with particularity the reasons" for rejecting such findings. See ZRB, LLC v. N.J. Dep't of Envtl. Prot., 403 N.J. Super. 531, 561 (App. Div. 2008) (quoting N.J.S.A. 52:14B-10(c)).

We consider whether Stankowski was permanently disabled. She essentially argues that Dr. Berman's findings overlooked and underevaluated her medical history. We agree that Dr. Berman minimized the significance of Stankowski's extensive rounds of treatment and evaluations in 2008 and 2011. Furthermore, the Board's finding that Stankowski was able to work rested on a questionable evidential foundation. Also, the Board failed to reconcile its acceptance of Stankowski's testimony with its rejection of Dr. Weiss's opinion in favor of Dr. Berman's. In light of these defects in the Board's decision, we remand for further consideration.

13

Essential to Dr. Berman's opinion was his clinical examination that belied Stankowski's complaints of radiculopathy and disabling pain. We agree that Stankowski's complaints required clinical verification. Stankowski's diagnostic imaging results were insufficient to confirm a disabling injury unless they were correlated with clinical findings. See In re Hurt, 355 P.3d 375, 381 (Wy. 2015) (reciting the AMA Guides, which say conditions such as radiculopathy can only be diagnosed if the diagnostic imaging correlates with clinical findings).

However, in addition to the MRI, EMG and discograms – which Dr. Berman opined were false positives or of little probative value – Stankowski submitted to multiple clinical examinations in 2008 and 2011, which correlated her imaging results with clinical findings. Contrary to Berman's own brief examination, these physicians found that Stankowski suffered radiculopathy and back pain. Doctors Kahn and Corda wrote reports in 2008 and 2011 describing Stankowski's presentation during hands-on physical examinations. She had restricted motion, walked with a limp, had back pain and showed leg pain consistent with radiculopathy. Drs. Mitchell and Lowe, in 2011, saw similar symptoms during their hands-on evaluations. Dr. Weiss saw Stankowski and she manifested physical symptoms during her examination with him.

A-0450-17T2

The value of an expert's opinion is bounded by the facts and reasoning underlying the opinion. State v. Jenewicz, 193 N.J. 440, 466 (2008). Dr. Berman did not adequately explain the contrary clinical findings of multiple treating physicians, nor did the Board adequately explain its acceptance of Dr. Berman's conclusion in light of his omission.

The Board concluded that Stankowski was able to work, because she returned, after her accident, on light duty in 2008 until she was laid off. The Board stated, "Ms. Stankowski's ability to work under an accommodation means that she is not permanently and totally disabled from performing her job duties." This conclusion lacks fair support in the record for three reasons.

First, the Board's finding that Stankowski "denied being unable to perform her job duties," is simply unsupported by the record the Board cites: the testimony of Dr. Weiss, who actually testified to the opposite; and an exhibit that does not exist.

Second, the Board misplaced reliance on Stankowski's condition in May 2010, when she ceased work because of the lay-off, and not pain. Stankowski sought disability retirement benefits almost a year and a half later, when, she said, she was unable to work because of the pain.

Third, Dr. Berman noted that two of Stankowski's treating physicians opined in 2011 that she could return to light duty work. Stankowski's doctors primarily relied on the FCE and her prior ability to work light duty. Putting aside the questioned reliability of the FCE's methodology, the Board provides no basis for concluding that the FCE's determination in 2008 that Stankowski was capable of performing light duty was still valid when Stankowski filed for benefits more than three years later, despite the degenerative nature of her condition. Stankowski testified that she worked through pain in 2008 to 2010. Roughly a year and a half after she stopped work, she concluded that she could not return, even if a job were available. In other words, her condition had worsened to the point that she could not perform even under light duty conditions.

Finally, the Board's decision is subject to challenge because the Board did not disturb the ALJ's finding that Stankowski was a credible witness. Since that finding involved an "issue[] of credibility of lay witness testimony," the Board could not reject or modify it "unless it is first determined from a review of the record that the findings are arbitrary, capricious or unreasonable or are not supported by sufficient, competent, and credible evidence in the record."

16

N.J.S.A. 52:14B-10(c); see, e.g., In re Adoption of Amendments, 435 N.J. Super. at 584. The Board made no such requisite determination.

Nonetheless, the Board credited Dr. Berman's testimony that Stankowski's 2008 injury did not leave her disabled. That testimony was inherently inconsistent with Stankowski's own lay witness testimony in 2016. She stated she was in constant pain; she worked through pain when she returned to work in 2008; and by 2011, she concluded that she was unable to work under any conditions.

The Board was obliged to explain its internally inconsistent findings. "It has long been recognized that '[o]ne of the best protections against arbitrary exercise of discretionary power lies in the requirement of findings and reasons that appear to reviewing judges to be rational.'" In re Hawley, 98 N.J. 108, 115 (1984) (quoting K. Davis, Administrative Law, § 16.12, at 585 (1970 Supp.)). Absent such an explanation, we are constrained to conclude that the decision was arbitrary and capricious.

In light of these defects in the Board's decision, we reverse and remand for further consideration. We emphasize the issue is not whether Stankowski was totally disabled when she stopped working in May 2010, but whether she was disabled when she applied for accidental disability benefits in October 2011

17

and thereafter. Finally, in light of our remand, we do not reach the issue whether, if Stankowski is deemed totally and permanently disabled, the 2008 accident was a sufficient cause to qualify for accidental, as opposed to ordinary disability retirement benefits. See Gerba v. Bd. of Trs. Pub. Emps.' Ret. Sys., 83 N.J. 174, 186 (1980) (stating that, to qualify for accidental disability retirement benefits, the member must show that the accident was "the essential significant or the substantial contributing cause of the resultant disability" and a disability resulting from the mere aggravation or igniting of an underlying condition, such as osteoarthritis, is an "ordinary" disability); N.J.S.A. 43:15A-43 (stating that "permanent and total disability resulting from a . . . musculo-skeletal condition which was not a direct result of a traumatic event occurring in the performance of duty shall be deemed an ordinary disability").

Reversed and remanded for further consideration. We do not retain jurisdiction.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-0450-17T2